**JOHN F. MARTIN, ESQ. (SBN 52618)**
**CHRISTINE HOPKINS, ESQ. (SBN 240248)**
**LAW OFFICES OF JOHN F. MARTIN**
A Professional Corporation
3100 Oak Road, Suite 230
Post Office Box 5331
Walnut Creek, CA  94596
Telephone:   (925) 937-5433
Facsimile:    (925) 938-5567

Attorneys for Plaintiff
SHERI GARAY

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

SHERI GARAY

              Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY
OF AMERICA; DOES 1-10

              Defendants.

_____/

Case No. 4:08-cv-01059-SBA

**DECLARATION OF SHERI A. GARAY IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Date:   July 22, 2008**
**Time:   1:00 p.m.**
**Crtrm: 3**

**Honorable Saundra Brown Armstrong**

I, Sheri A. Garay, declare that the following is true and correct under penalty of perjury under the laws of the United States of America:

1) I am the Plaintiff and Petitioner in the above-captioned case. This declaration is made in support of Plaintiff's Opposition to Defendants' Motion for Partial Summary Judgment. The facts set forth in this declaration are personally known to me and I have first-hand knowledge of these facts. if called to testify as a witness in this case, I could and would testify competently to these facts.

2) I was the sole proprietor of Site for Sore Eyes from 1989 through December 2003. In December of 2003, I sold the business to New Age Optical and never thereafter worked for New Age Optical in any capacity. Attached as Exhibit RR to the Declaration of Anna M. Stein is a true and

correct copy of the Asset Purchase Agreement and Bill of Sale which I signed on or about December 8, 2003.

3) At the time I enrolled in Unum disability benefits and thereafter, I did not do anything to endorse, praise, or otherwise promote Unum's policy, Unum's benefits, or Unum as a company to my employees.

4) At the time I enrolled in Unum disability benefits and thereafter, I did not require any employees of Site for Sore Eyes to enroll in Unum's Disability benefits. Employees signed an enrollment form if they wished to enroll and could refuse coverage if they so chose.

5) At the time I enrolled in Unum disability benefits and thereafter, I did not do anything to establish or maintain the policy or benefits. I simply allowed Unum to distribute its materials (booklets and enrollment forms) to Site for Sore Eyes and sent to Unum the premiums due for employees who chose to enroll.

6) I no longer am in possession of the payroll records from Site for Sore Eyes as the documents were shredded. I remember that my employees had the option of enrolling in Unum disability benefits and Unum life insurance benefits. I believe that I did not deduct the disability benefits premium from my employees' paycheck but that I did deduct the life insurance benefits premium from my employees' paycheck. The only reason I did not deduct the disability benefits premium from my employees' paycheck was because Leon Brilliant told me this was what Unum required under the policy. I did not feel I had any choice but to pay the premiums for the employees because otherwise I would be in breach of the Unum contract and policy.

7) When I contacted Leon Brilliant, a broker of insurance, in 1995, I was interested in and inquired about obtaining an individual disability benefits policy. Mr. Brilliant, however, recommended and sold the Unum group policy. I took the Unum policy as it was given to me. I did not at any time have any choice about the wording of the policy, the definition of terms, or adding any special language to the plan which would be unique to my business.

8) At the time I enrolled in Unum disability benefits and thereafter, I remember receiving and

reading booklets from Unum about the benefits policy. I distinctly remember that there were two different booklets, one for myself and a different version for the employees. Based on my examination and review of these booklets, I determined that my policy was not covered by ERISA because my booklet contained no section which discussed ERISA or any rights I had thereunder. I also determined that my employees' booklets did contain an additional section which referred to ERISA.

9) I always believed, based on the difference in the booklets and the sending of mail addressed to both "Sheri Garay" and "Site for Sore Eyes" that I had a separate policy from that of my employees. My understanding was confirmed when I received a rider to my policy addressed to "Sheri A. Garay," not Site for Sore Eyes as other riders were addressed. A true and correct copy of the rider I received from Unum for "Sheri A. Garay" is attached as Exhibit 1 to this declaration.

10) Attached as Exhibit 2 to this declaration is a true and correct copy of a letter I received from Unum dated June 21, 2002. The letter did not refer to ERISA, nor advise me of any ERISA rights I might have.

11) Attached as Exhibit 3 to this declaration is a true and correct copy of a letter I received from Unum dated March 3, 2003. The letter did not refer to ERISA, nor advise me of any ERISA rights I might have.

12) Attached as Exhibit 4 to this declaration is a true and correct copy of a letter I received from Unum dated April 24, 2003. The letter did not refer to ERISA, nor advise me of any ERISA rights I might have.

13) Attached as Exhibit 5 to this declaration is a true and correct copy of a letter I received from Unum dated June 17, 2003. The letter did not refer to ERISA, nor advise me of any ERISA rights I might have.

14) Attached as Exhibit 6 to this declaration is a true and correct copy of a letter I received from Unum dated September 5, 2003. The letter did not refer to ERISA, nor advise me of any ERISA rights I might have.

15) Attached as Exhibit 7 to this declaration is a true and correct copy of a letter I received from Unum dated October 16, 2003. The letter did not refer to ERISA, nor advise me of any ERISA rights I might have.

16) Attached as Exhibit 8 to this declaration is a true and correct copy of a letter which Unum sent to me on August 18, 2006 confirming that my disability benefits were not and are not taxable.

17) Attached as Exhibit 9 to this declaration is a true and correct copy of a letter I received from Unum dated December 1, 2006. The letter did not refer to ERISA, nor advise me of any ERISA rights I might have.

18) Attached as Exhibit 10 to this declaration is a true and correct copy of a letter I received from Unum dated January 19, 2007. The letter did not refer to ERISA, nor advise me of any ERISA rights I might have.

19) Attached as Exhibit 11 to this declaration is a true and correct copy of a letter I received from Unum dated February 5, 2007. The letter did not refer to ERISA, nor advise me of any ERISA rights I might have.

20) Attached as Exhibit 12 to this declaration is a true and correct copy of a letter I received from Unum dated May 4, 2007. The letter did not refer to ERISA, nor advise me of any ERISA rights I might have.

21) Attached as Exhibit 13 to this declaration is a true and correct copy of a telephone call I had with Carol Lewis on May 21, 2007. I recall this conversation and Ms. Lewis did not advise me of any ERISA rights I might have. I recall that from the beginning of my claim in 2001 through the present, I made multiple telephone calls to Unum about my disability benefits and my disputes about those benefits, however none of the Unum representatives that I spoke with ever verbally advised me that my plan was covered by ERISA nor advised me as to any rights I might have under ERISA.

22) Attached as Exhibit 14 to this declaration is a true and correct copy of a letter I received from Unum dated August 15, 2007. The letter did not refer to ERISA, nor advise me of any ERISA rights I might have.

Executed on June 25, 2008 in Walnut Creek, CA.

BY: _____

SHERI A. GARAY

**EXHIBIT 1**



This rider is attached to and made a part of the certificate which was issued to you under the coverage provided for:

**SHERI A. GARAY**

Group Identification No. **108121**

- DESCRIPTION OF ELIGIBLE CLASSES

  All employees of each participating employer.

- AMOUNT OF INSURANCE

  1. 60% (benefit percentage) of basic monthly earnings not to exceed the maximum monthly benefit, less other income benefits.

     Note:   This benefit is subject to reductions for earnings as provided in the section titled "How is the benefit figured?"

  2. The maximum monthly benefit is **$6000**.

  3. The minimum monthly benefit is the greater of:
     a.   $100.00; or
     b.   10% of the monthly benefit before deductions for other income benefits.

- ELIMINATION PERIOD

  **180 Days**

- WAITING PERIOD

  If you were in an eligible class on or before the policy effective date:  **NONE**

  If you entered an eligible class after the policy effective date:  **30 Days**

  You must be in continuous active employment in an eligible class during the specified waiting period.

  Previous service in an eligible or an ineligible class will apply toward the waiting period to determine your date of eligibility.

- HOW IS THE BENEFIT FIGURED?

  To figure the amount of your monthly benefit:

  a. Take the lesser of:

      i.   60% of your basic monthly earnings; or

      ii.  the amount of the maximum monthly benefit; and

  b. Deduct other income benefits from this amount.

The effective date of this rider is **October 1, 1995**, or the effective date of your certificate, whichever is later.

These provisions only apply to disabilities which start on or after the effective date.

Dated at Portland, Maine this **10th** day of **December, 1998**.

UNUM Life Insurance Company of America

**LC-CR-RIDER**

**EXHIBIT 2**



June 21, 2002

SHERI GARAY
3326 DORAL COURT
WALNUT CREEK, CA 94598-3643

RE:     Sheri Garay              DOB: July 17, 1952
        Claim Number:            0099243598
        Policy Number:           00108121 - 0001
        Tax ID:                  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

Dear Ms. Garay:

We have completed our initial review of your claim for disability benefits.

The policy under which you are covered defines disability as follows:

"Disability" and "disabled" mean that because of injury or sickness:

1. the insured cannot perform each of the material duties of his regular occupation; and

2. after benefits have been paid for 24 months, the insured cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted, taking into consideration training, education, or experience, as well as prior earnings; or

3. the insured, while unable to perform all of the material duties of his regular occupation on a full-time basis, is:

    a. performing at least one of the material duties of his regular occupation or another occupation on a part-time or full-time basis; and
    b. earning currently at least 20% less per month than his indexed pre-disability earnings due to that same injury or sickness.

UNUM LIFE INSURANCE COMPANY OF AMERICA
Glendale Customer Care Center
655 North Central Avenue, Suite 800
Glendale, CA 91203-1400
Toll-free (877) 851-7637
Facsimile (877) 851-7624

UACL00033

---

*Claimant Name: Sheri  Garay      Claim #: 322239*

Claimant Name:     Sheri Garay
Claim Number:      0099243598

Page: 2

To determine if you meet the policy definition of disability, we need some additional information. Specifically, we need detailed information regarding your restrictions and limitations. We have asked your employer to send us information regarding your earnings. In addition, we are contacting Dr. Smith to obtain the medical information necessary to continue the evaluation of your claim.

The policy under which you are covered states:

When the Company receives proof that an insured is disabled due to sickness or injury and requires the regular attendance of a physician, the Company will pay the insured a monthly benefit after the end of the elimination period. The benefit will be paid for the period of disability if the insured gives to the Company proof of continued:

    1.  disability; and

    2.  regular attendance of a physician.

The proof must be given upon request and at the insured's expense.

The monthly benefit will not:

    1.  exceed the insured's amount of insurance; nor

    2.  be paid for longer than the maximum benefit period.

The amount of insurance and the maximum benefit period are shown in the policy specifications.

Accordingly, and to prevent delays, you are responsible for ensuring that we receive the requested information within 45 days of the request. You can do this by encouraging the doctor(s) to respond to us quickly. We will give you regular status reports of our evaluation and notify you once we have determined your eligibility for benefits.

Failure to receive the requested information needed to fully evaluate your claim for benefits may result in an extension of the time period required to make a decision on your claim.

Should you have any questions, please feel free to contact me at (800) 424-2008, ext. 4349.

UACL00034

*Claimant Name: Sheri   Garay     Claim #: 322239*

Claimant Name:      Sheri Garay
Claim Number:       0099243598

Page: 3

Sincerely,


Meredith Galentine
Customer Care Specialist

cc:     Site For Sore Eyes

UACL00035

**EXHIBIT 3**



March 3, 2003

SHERI GARAY
3326 DORAL COURT
WALNUT CREEK, CA 94598-3643


RE:     Sheri Garay              DOB: July 17, 1952
        Claim Number:            0099243598
        Policy Number:           00108121 - 0001
        Tax ID:                  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

Dear Ms. Garay:

We have completed our review of your Long Term disability claim and are unable to continue benefits.

According to the policy under which you are covered:

"Disability" and "disabled" mean that because of injury or sickness:

1. the insured cannot perform each of the material duties of his regular occupation; and

2. after benefits have been paid for 24 months, the insured cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted, taking into consideration training, education, or experience, as well as prior earnings; or

3. **the insured, while unable to perform all of the material duties of his regular occupation on a full-time basis, is:**

   a. performing at least one of the material duties of his regular occupation or another occupation on a part-time or full-time basis; and
   b. **earning currently at least 20% less per month than his indexed pre-disability earnings due to that same injury or sickness.**

On February 12, 2003, we received the Statement of Income for December 2002 from Carl Dobratz, your accountant. Included in that statement were the 2002 calendar year end profit and

UNUM LIFE INSURANCE COMPANY OF AMERICA
Glendale Customer Care Center
655 North Central Avenue, Suite 800
Glendale, CA 91203-1400
Toll-free (877) 851-7637
Facsimile (877) 851-7624

UACL00372

*Claimant Name: Sheri Garay      Claim #: 322239*

Claimant Name:    Sheri Garay
Claim Number:    0099243598

Page: 2

loss totals for your business. It was referred to our CPA Team in order to determine if your
benefits had been paid correctly compared to your year end statement.

To determine if there were any major differences between the year end profit and loss statement
and the 2002 tax return, the 2001 profit and loss statement was compared to the 2001 tax return
to ascertain what differences from the books to the tax statement occurred. Other than
depreciation, which is excluded anyway, only the 50% exclusion of meals and entertainment
produced a variance. Therefore, it was deemed that the 2002 year end profit and loss statement
could be relied on for this review.

It was noted that the total gross profit only fell by $7000 in 2002 (less than 1%) compared to
2001. Your total gross profit for 2001 was $724,571.88 versus the 2002 year end gross profit of
$717,503.60. Consequently, your financial loss in 2002 would be due to increased expenses
rather than a loss of received revenue. The largest increases in expenses were in Wages
($15,000), Accounting ($4390), Legal ($38,441), and Travel ($6069). Other than Wages, these
would not be categories that we would expect to be affected by your disability.

To ensure that the variance between these three line items during 2002 and 2001 were not due to
a one year anomaly, the expenses for the 3 years prior to your date of disability were averaged.
Please refer to the enclosed sheet labeled "Financial Statement Comparison."

Based on the comparison of the three year averages versus the 2002 year end totals, it was
determined that the financial losses were likely due to business decisions/conditions not related
to your disability. However, it was assumed that the increase to Wages was due to your
disability. Adding back the non-disability losses from travel and legal to the net income results
in an earnings loss of less than 1% in 2002.

Because your business was able to generate more revenue in 2002 than you did in the 3 years
prior to your date of disability and only 1% less than in the year of disability, it seems likely that
you did not have an earnings loss in 2002 due to your disability. The expense analysis supports
this statement.

Based on our CPA team's recalculation for corrected figures for 2002, your claim was overpaid
in the amount of $29,315.55. Refer to the enclosed recalculation sheet.

We called you on February 20, 2003, to discuss this matter. In order to understand what could
cause the variance in the areas of Accounting, Travel, and Legal & Professional we asked both
you and your accountant for information regarding these line items to determine if they increased
due to disability related events.

You stated that you went to two business trips during 2002, hence the $6000 rise in your travel
expenses compared to the prior year. This was determined to not be a disability related expense.
You stated that the rise in legal fees were for a will that was going through probate and to
address concerns that your business' 401(k) fund was not performing as desired. Again, these
items are not related to your disability.

UACL00373

Claimant Name:     Sheri Garay
Claim Number:      0099243598

Page: 3

For the increase in the Accounting line, you were not sure of what would cause that, as you believed that Mr. Dobratz was charging the same rates. You asked us to speak with Mr. Dobratz, as he would have all of the figures.

We contacted Mr. Dobratz on February 20, 2003 and stated the findings of our CPA Team as well as your comments as to what would cause the increases. We agreed that I would fax copies of this information to him and he would review our findings and your financial file and contact our office within one week to discuss. I faxed this information to him on the afternoon of February 20, 2003.

On February 27, 2003, two messages were left with Mr. Dobratz's office assistants, once in the morning and once in the afternoon. He did not return our calls. We then left a message for you at your home and on your cell phone. No calls were returned.

As we did not receive any information to support that the increase in your expenses were related to disability specific events, we will not accept further liability on your claim, as you did not satisfy the financial component of your definition of disability:

> **3. the insured, while unable to perform all of the material duties of his regular occupation on a full-time basis, is:**

> **b. earning currently at least 20% less per month than his indexed pre-disability earnings due to that same injury or sickness.**

Furthermore, you have 30 days to submit the overpayment amount of $29,315.55, or we will refer your file to our Financial Recovery Unit.

If you have additional information to support your request for disability benefits, it must be sent to my attention for further review at the address noted on this letterhead, within 180 days of the date you receive this letter.

However, if you disagree with our determination and want to appeal this claim decision, you must submit a written appeal. This appeal must be received by us within 180 days of the date you receive this letter. You should submit your written appeal to the following address:

> UnumProvident
> Glendale Customer Care Center
> Quality Performance Support -- Appeals
> PO Box 29015
> Glendale, CA  91209-9015

A decision on appeal will be made not later than 45 days after we receive your written request for review of the initial determination. If we determine that special circumstances require an

UACL00374

---

Claimant Name:     Sheri Garay
Claim Number:      0099243598

Page: 4

extension of time for a decision on appeal, the review period may be extended by an additional 45 days (90 days in total). We will notify you in writing if an additional 45 day extension is needed.

If an extension is necessary due to your failure to submit the information necessary to decide the appeal, the notice of extension will specifically describe the required information, and you will be afforded at least 45 days from receipt of the notice to provide the specified information. If you deliver the requested information within the time specified, the 45 day extension of the review period will begin after you have provided that information. If you fail to deliver the requested information within the time specified, we may decide your appeal without that information.

You will have the opportunity to submit written comments, documents, or other information in support of your appeal. You will have access to all relevant documents as defined by applicable U.S. Department of Labor regulations. The review will take into account all new information, whether or not presented or available at the initial determination. No deference will be afforded to the initial determination.

The review will be conducted by us and will be made by a person different from the person who made the initial determination and such person will not be the original decision maker's subordinate. In the case of a claim denied on the grounds of a medical judgment, we will consult with a health professional with appropriate training and experience. The health care professional who is consulted on appeal will not be the individual who was consulted during the initial determination or a subordinate. If the advice of a medical or vocational expert was obtained by the Plan in connection with the denial of your claim, we will provide you with the names of each such expert, regardless of whether the advice was relied upon.

If your request on appeal is denied, the notice of our decision will contain the following information:

a.  the specific reason(s) for the appeal determination;
b.  a reference to the specific Plan provision(s) on which the determination is based;
c.  a statement disclosing any internal rule, guidelines, protocol or similar criterion relied on in making the adverse determination (or a statement that such information will be provided free of charge upon request);
d.  a statement describing your right to bring a civil suit under federal law;
e.  a statement that you are entitled to receive upon request, and without charge, reasonable access to or copies of all documents, records or other information relevant to the determination; and
f.  a statement that "You or your plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor office and your State insurance regulatory agency."

UACL00375

Claimant Name:    Sheri Garay
Claim Number:     0099243598

Page: 5

Notice of the determination may be provided in written or electronic form. Electronic notices will be provided in a form that complies with any applicable legal requirements.
Unless there are any special circumstances, this administrative appeal process must be completed before you begin any legal action regarding your claim.

If we do not receive your written appeal within 180 days of the date you receive this letter, our claim determination will be final.

In addition, you may also contact the California Insurance Department if you wish to have them review your claim. If you wish to contact the Department by telephone, you should ask for the Consumer Communications Bureau at 1-800-927-HELP (1-800-927-4357) or 213-897-8921. If you wish to write to the Insurance Department, your letter should be addressed to:

> California Department of Insurance
> Claims Service Bureau, 11th Floor
> 300 South Spring Street
> Los Angeles, CA 90013

The policy under which you are insured for this claim has a provision which states, in part, that no lawsuit or legal action shall be brought to recover on the policy after the expiration of three years from the time proof of loss is required.

If you have *new, additional* information not already in our file to support your request for disability benefits, please send it to the address noted in this letter. For example:

> Any financial documentation that would support that your expenses were due to disability related causes.

If you have additional information to submit, please do so within 90 days from the date of this letter. If additional information is received after the 90 day period, your claim will not be eligible for review and the claim denial will be upheld.

We have not completed an evaluation of your claim with respect to plan provisions other than those discussed above. The Company reserves its right to enforce any and all provisions of the plan.

Should you have any questions, please feel free to contact me at (877) 851-7637 ext. 4349.

UACL00376

Claimant Name:     Sheri Garay
Claim Number:      0099243598

Page: 6

Sincerely,


Meredith Galentine
Customer Care Specialist

cc:    Site For Sore Eyes

UACL00377

*Claimant Name: Sheri   Garay     Claim #: 322239*

**EXHIBIT 4**

UNUMPROVIDENT.

April 24, 2003

Sherri Garay
3326 Doral Court
Walnut Creek, CA 94598

Re:    Disability Policy No. 108121
       Claim No: 99243598

Dear Ms. Garay:

We have completed the appellate review of our prior decision of March 3, 2003. After a careful review of all file documentation, we regret to advise you that the decision to deny ongoing disability benefits on your claim was appropriate and we have upheld it.

The policy under which you were covered defines Disability and Disabled that because of injury or sickness:

1.  You cannot perform each of the material duties of your regular occupation; and

2.  after benefits have been paid for 24 months, you cannot perform each of the material duties of any gainful occupation for which you are reasonably fitted by training, education or experience; or

3.  you, while unable to perform all of the material duties of his regular occupation or another occupation on a full-time basis; are

    a.    performing at least one of the material duties of your regular occupation or another occupation on a part-time or full-time basis; and

    b.    currently earning currently at least 20% less per month then your indexed pre-disability earnings due to that same injury or sickness.

Disability benefits commenced March 4, 2002, and have been paid through December 3, 2002, when the documentation made available to us indicated that you were no longer earning 20% less per month then your indexed pre-disability earnings due to disability.

We received your written appeal on April 2, 2003. In your appeal, you indicate that our calculations were incorrect in terms of both monies paid out on your claim as well as calculations regarding income you have received while on claim. You did not provide any documentation in support of this claim. It is also noted that the information requested from your accountant on February 20, 2003 has not been received.

UACL00391

---

UnumProvident Corporation • 1 Fountain Square, Chattanooga, TN 37402 • 423.755.1011 • www.unumprovident.com

Claimant Name: Sheri  Garay    Claim #: 322239

Page 2. Sherri Garay

In our letter of March 3, 2003, we provided you with the information utilized in our determination and I refer you to that letter for the specific financial information. In my comprehensive review of your claim, I could not find any error in the calculations used, and/or our understanding of the information provided to us. Based on the information made available to us, the appropriate policy provisions were applied to your claim.

We understand that you disagree with our decision per your appeal letter. Without additional financial information that can be correlated to a loss associated with disability, our appellate review must conclude that the decision to deny ongoing liability was appropriate. No further benefits beyond December 3, 2002 are due or payable on your claim.

If you have additional financial information that you wish for us to review, please submit this to my attention. This information must be submitted within the next 45 days but no later then June 8, 2003.

Please direct this information to my attention at POB 180136, Chattanooga, TN. My fax number is 423 755 8383.

Any information received after June 8, 2003 will be considered too late for this appellate review, and our March 3, 2003 decision will be final.

In our letter of March 3, 2003, we advised you that an outstanding overpayment of $29,315.55 has occurred on your claim. We maintain the contractual right to recoup this overpayment. In the event additional information is not received by June 8, 2003 that changes this overpayment, your claim will be referred to our Financial Recovery unit for further review.

We understand you have contacted our billing department regarding premiums on this policy now due. The policy provided a waiver of premium during the period of time that benefits were payable. As benefits ended on December 3, 2002, the waiver was removed. In order to continue coverage under this policy, premiums are again due. In the event liability is reinstated on your claim, premium payments will be adjusted retroactively.

I do regret that our decision could not be more favorable to you at this time. If you have any questions you may contact me at 1 800 451 8464 ext. 2348.

Sincerely,

Virginia Anne Jamieson
Senior Appeals Specialist
UNUM Life Insurance Company of America

UACL00392

Claimant Name: Sheri  Garay     Claim #: 322239

Page 3. Sherri Garay

Section 2695.7(b)(3) of the California Unfair Claims Settlement Practices Regulations requires that our company advise you that if you believe your claim has been wrongfully denied or rejected, you may have the matter reviewed by the California Department of Insurance at:

California Department of Insurance Claims Services Bureau

300 South Spring Street, 11th Floor

Los Angeles, CA 90013

(800) 927-4357 or (213) 897-8921

The policy under which you are insured for this claim has a provision which states, in part, that no lawsuit or legal action shall be brought to recover on the policy more than 3 years after the earlier of either (a) the date we receive the proof of loss; or (b) the end of the period within which proof of loss is required to be given.

UACL00393

**EXHIBIT 5**

UNUMPROVIDENT

June 17, 2003

Kirsten Erath Barranti
375 Diablo Road
Suite 200
Danville, CA 94526

Re:    Sherri Garay
       Disability Policy No. 108121
       Claim No: 99243598

Dear Ms. Erath Barranti:

We have completed our review of the additional information submitted on Ms. Garay's behalf. I regret to inform you that this information does not reverse the March 3, 2003 decision that denied ongoing disability benefits on Ms. Garay's claim.

In our prior correspondence of March 3, 2003, and April 24, 2003, we provided Ms. Garay with the policy provisions that were applied to her claim, and the specific information utilized in our determination.

Disability benefits had commenced on March 4, 2002, and were paid through December 3, 2002, when the documentation made available to us indicated that Ms. Garay was no longer earning 20% less per month then her indexed pre-disability earnings due to a disability.

We received Ms. Garay's written appeal on April 2, 2003. In her appeal, she indicated that our calculations were incorrect, but she did not provide any documentation that would change our calculations in support of her contention. In our appellate review of her claim, we did not find any error in the calculations used, and/or our understanding of the information provided to us. Based on the information made available to us, it was determined that the appropriate policy provisions had been applied to Ms. Garay's claim, and she was advised of our appellate review decision in our letter of April 24, 2003.

We received your letter on Ms. Garay's behalf on June 5, 2003. In this letter, you refer to four types of expenses and you offered an explanation of them with your request that in light of this information, we recalculate Ms. Garay's claim. We had the financial consultant who had previously reviewed Ms. Garay's claim review this letter and the information it contained. Her response follows:

UACL00434

Claimant Name: Sheri  Garay    Claim #: 322239

Page 2. Sherri Garay

<u>Wages</u>:

Response-We had already assumed in our February review that expenses had been due to disability and had made no adjustment for this expense.

<u>Accounting</u>:

Response: We inquired about the increase in accounting expenses in February 2003, and neither Ms. Garay or her CPA mentioned the selling of the stores. We do not have any documentation either by phone or letter mentioning the selling of stores. It was noted that Ms. Garay's financial statements showed a large increase to depreciation in December 2002, but it is not known if the related assets were for the stores that Ms. Garay intended to sell, or keep. It is also not clear if the selling of the stores was in fact, related to Ms. Garay's disability, or a business decision unrelated to her disability.

**Recommendation:** Please send to us copies of the CPA billing for 2002 to support the expenses. Please also have the CPA confirm in writing as to when the work regarding the selling of the stores was initiated, as well as his understanding of the reason for the same. We will need a copy of the engagement letter, which the CPA would have prepared for Ms. Garay to sign when the engagement was initiated. Please also have Ms. Garay's CPA provide us with an explanation for the increase in the depreciation in December, and how any large asset purchases fit into Ms. Garay's plan to sell/keep her stores.

<u>Legal Fees:</u> While you stated that the CPA has determined that a portion of the attorney's fees were personal, you did not comment on the remaining fees. A discrepancy is noted in that you stated that legal fees in 2002 were $38,441, with $16,288 of that amount being personal. The financial statement we have reflects legal fees totaling $44,707 in 2002, and we were advised by Ms. Garay in February 2003, that these fees were related to her ex husband's estate and her 401K.

**Recommendation:** Please send to us copies of the attorney billings in 2002, inclusive of descriptions of the services they provided.

<u>Travel Expenses:</u> It was indicated in the letter of June 5, 2003, that the travel expenses were related to the selling of the stores. Ms. Garay's statement in February 2003 indicated that the travel expenses were for two trips to symposiums in Las Vegas and New York City.

**Recommendation:** Please send us documentation of the travel expenses inclusive of the hotel bills, airline tickets, etc. which may help us clarify the conflicting information.

In further review of your letter in conjunction with the information already in Ms. Garay's file, it was noted that with the exception of wages, you did not state that extra expenses in 2002 were related to Ms. Garay's disability. Because Ms. Garay's revenue declined very little in 2002, her losses were due to

UACL00435

increased expenses. Since Ms. Garay was able to generate revenue in 2002 that nearly matched her pre

Page 3. Sherri aray

disability revenue, we need supporting documentation that the increased expenses are related to her
disability, and are not due to other business decisions or conditions.

Please submit this additional financial information for us to review to my attention. This information must
be submitted within the next 30 days (with 5 days-mailing time) but no later then July 22, 2003.

Please direct this information to my attention at POB 180136, Chattanooga, TN. My fax number is 423
755 8383.

Any information received after July 22, 2003 will be considered too late for this appellate review, and our
March 3, 2003 decision will be final.

I am in the act of securing copies of the canceled checks for the payments made to Ms. Garay on
November 12, 2002, December 3, 2002 and January 9, 2003. These should be available shortly, and I will
fax them to you upon receipt. It is still our position that an outstanding overpayment of $29,315.55 exists
occurred on Ms. Garay's claim, and we maintain the contractual right to recoup this overpayment. In the
event additional information changes our calculations, the overpayment will be adjusted accordingly.

If you have any questions you may contact me at 1 800 451 8464 ext. 2348.

Sincerely,

Virginia Anne Jamieson
Senior Appeals Specialist
UNUM Life Insurance Company of America

UACL00436

**EXHIBIT 6**

UNUMPROVIDENT

September 5, 2003

Laurence Padway
1516 Oak Street
Suite 109
Alameda, CA 94501

Re:    Sherri Garay
       Disability Policy No. 108121
       Claim No: 99243598

Dear Mr. Padway:

We have completed our third review of the denial of ongoing liability on Ms. Garay's claim. I regret to inform you that the additional information provided in your letters of August 8, 2003, and August 15, 2003 does not allow us to reverse the March 3, 2003 denial decision.

In our prior correspondence of March 3, 2003, April 24, 2003, and June 17, 2003, we provided Ms. Garay and her prior attorney with the policy provisions that were applied to her claim, as well as the data utilized in our determinations. I refer you to these letters for the specific information they contain.

The policy defines Disability and Disabled that because of injury or sickness:

1.  You cannot perform each of the material duties of your regular occupation; and

2.  after benefits have been paid for 24 months, you cannot perform each of the material duties of any gainful occupation for which you are reasonably fitted by training, education or experience; or

3.  you, while unable to perform all of the material duties of his regular occupation or another occupation on a full-time basis; are

    a.    performing at least one of the material duties of your regular occupation or another occupation on a part-time or full-time basis; and

    b.    currently earning currently at least 20% less per month then your indexed pre-disability earnings due to that same injury or sickness.

Basic Monthly Earnings (BME) is defined for a Sole Proprietor as the annual net profit averaged over:

    a.    the 3 most recent years; or

UACL00477

Claimant Name: Sheri  Garay    Claim #: 322239

Page 2 Sherri Garay

b.      the period that you have been a sole proprietor, if you have been a sole proprietor for less than 3 years,

then divided by 12.

Annual net profit is figured on form 1040 Schedule C as the gross income less total deductions minus depreciation.

Ms. Garay's date of disability was established as September 5, 2001, and disability benefits commenced after the completion of the Elimination period on March 4, 2002. Benefits were paid through December 3, 2002, when the documentation made available to us indicated that she was no longer earning 20% less per month then her indexed pre-disability earnings due to disability. In establishing her Basic Monthly Earnings, we used the 3-year period prior to her disability as stipulated by the policy.

We received Ms. Garay's written appeal on April 2, 2003. In her appeal, she indicated that our calculations were incorrect, but she did not provide any documentation that would change our calculations in support of this contention. In our initial appellate review of her claim, we did not find any error in the calculations used, and/or our understanding of the information to us. Based on the information made available to us, we determined that the appropriate policy provisions had been applied to Ms. Garay's claim, and she was advised of our appellate review decision in our letter of April 24, 2003.

We received a letter from her prior attorney on Ms. Garay's behalf on June 5, 2003. In this letter, she referred to four types of expenses and she offered an explanation of them with her request that in light of this information, we recalculate Ms. Garay's claim. We had the financial consultant who had previously reviewed Ms. Garay's claim review this letter and the information it contained. Our letter of June 17, 2003 provided this attorney with our detailed response to her concerns expressed about Ms. Garay's wages, accounting, legal fees, and travel expenses. In that letter, we asked that her attorney provide us with the following information in support of her contention that we had had not calculated Ms. Garay's claim correctly if she continued to disagree with our determination:

"Recommendation: Please send to us copies of the CPA billing for 2002 to support the expenses. Please also have the CPA confirm in writing as to when the work regarding the selling of the stores was initiated, as well as his understanding of the reason for the same. We will need a copy of the engagement letter, which the CPA would have prepared for Ms. Garay to sign when the engagement was initiated. Please also have Ms. Garay's CPA provide us with an explanation for the increase in the depreciation in December, and how any large asset purchases fit into Ms. Garay's plan to sell/keep her stores.

Recommendation: Please send to us copies of the attorney billings in 2002, inclusive of descriptions of the services they provided.

UACL00478

---

*Claimant Name: Sheri  Garay    Claim #: 322239*

Page 3 Sherri Garay

> Recommendation: Please send us documentation of the travel expenses inclusive of the hotel bills, airline tickets, etc. which may help us clarify the conflicting information.

We advised Ms. Garay's prior attorney that with the exception of wages, she had not stated that extra expenses in 2002 were related to Ms. Garay's disability. Because Ms. Garay's revenue declined very little in 2002, her losses were due to increased expenses. Since Ms. Garay was able to generate revenue in 2002 that nearly matched her pre disability revenue, we needed supporting documentation that the increased expenses were related to her disability, and were not due to other business decisions or conditions. We provided Ms. Garay's prior attorney with a 35 day period to submit this information.

On June 23, 2003, we received your request for a copy of Ms. Garay's file and policy, and this was provided to you with our response of June 25, 2003. In consideration of your recent appointment to Ms. Garay's case, we provided you with an additional 45 days, or until August 19, 2003 to provide you with additional time to provide documentation in support of Ms. Garay's contention that we have not calculated her claim correctly.

On August 8, 2003, we received your letter and a subsequent letter on August 15, 2003. In your letter of August 8, 2003, you posed several questions regarding the policy's definition of earnings, the work incentive benefit and how the policy establishes the date of disability. Along with this letter, you attached an affidavit signed by Ms. Garay. This affidavit certified to the hours she has worked since March 2002, her current occupational duties, her estimate of what her market earnings should be, and her reasoning as to why her business financial statements do not reflect other factors that have affected her earning ability.

In your letter of August 15, 2003, you request definition(s) of earnings that our company has utilized, sales training and promotion material, our CPA's credentials, and operational claim payout information.

We had your proposals and concerns reviewed by the CPA who had previously reviewed Ms. Garay's claim and in conjunction with the information already available in her file. I and would like to provide you with her response:

- The third paragraph of the August 8th letter inquires about WIB (Work Incentive benefit). I will try and address this question, but because he addresses so many different ideas, I may be misunderstanding the question. Therefore, I will address some of the topic he touches on in the five bullets below. The next two bullets address the fourth paragraph and the August 15th letter, respectively.

- WIB applies if the post disability loss is from 20% through 80%. There is no Partial Earnings reduction if the earnings plus the BMB (Basic Monthly Benefit) is less than the BME (Basic Monthly Earnings). The attorney appears to correctly understand that part of the provision.

UACL00479

Page 4 Sherri Garay

- In general, earnings are reviewed in the same way post-disability as they were pre-disability. This policy does not directly define earnings (post-disability), but it is reasonable to assume that this apple to apples approach is appropriate in order to assess any loss due to disability.

  The attorney states that we should separate the "earnings" from the "profits", but both the BME and the post-disability earnings would have some element of both from his view, so we are comparing apple to apples to calculate the post-disability loss. In addition, a self-employed individual "earns" income both from directly providing services/products and for managerial direction of others providing the services/products. Consequently, the number of hours worked for a self-employed person is not necessarily linear to "earnings". In fact, for many businesses, the owner benefit most from the leverage of other's time/services. Therefore, the only reasonable approach is to compare the post disability Schedule C to the pre-disability Schedule C, which was used to determine the pre-disability earnings.

- The pre-disability earnings are based upon the Schedule C (LC-DEF-1), and, per the policy definition, the depreciation expense is added back into the net income, which means that the depreciation does not reduce the claimant's BME. Similarly, the depreciation would be added back to the post-disability net income for our calculations. The attorney appears to believe that we would consider depreciation in our calculation, but the policy is clear that we do not. Therefore, whether the IRS is "arbitrary" or not is of no consequence to this calculation.

- The attorney seems to say that we cannot review the Schedule C for comparability to the pre-disability Schedule C in determining whether there is a post-disability loss. The definition of disability requires at least a 20% loss (LC-CR-RIDER). It states that this loss must be due to "...that same injury or sickness."

  A business might suffer a loss for any number of reasons, and therefore, contractually, we must review the Schedule C for losses that are not due to disability. See my 2/20/03 review and worksheets for that analysis.

  Please note that four types of expenses were determined to be higher than normal-wages, travel, and legal and accounting. Wages are assumed to be directly related to the claimant's disability, and no adjustment was made for that expense. The increase to the other expenses did not seem to be related to the disability, and the Customer Care Specialist inquired of the claimant. The claimant's explanations confirmed that the increases were not related to the disability (for instance, legal fees related to probate and a 401K).

  The claimant's previous attorney offered other explanations, but because they conflicted with the claimant's statements, and because it was still not clear if the losses were due to disability, we requested supporting documentation. We have not yet received the requested documentation.

UACL00480

Page 5 Sherri Garay

- For a detailed analysis of the 2002 expenses compared to the pre-disability Schedule C, see the review notes and two worksheets prepared on 2/20/03.

- The fourth paragraph states that "no effort" was made to ensure that the profit and loss statements were comparable to the Schedule C, which does not exist. This is not correct. See my 2/20/03 review notes, which are quite specific in addressing that issue. (Again, depreciation has no effect on our calculations as we exclude it from expenses.)

- The August 15th letter from the attorney reiterates questions about earnings, which I have addressed above. It also inquires about FASB standards. FASB standards are used in the issuance of financial statement. This matter is a contractual one, and therefore, FASB is not relevant."

It is our appellate conclusion, based on our additional review of the concerns you have posed in conjunction with the information already in Ms. Garay's file, that the decision to deny ongoing liability remains appropriate. We also find that we have not provided with documentation that would allow us to change the denial decision, which was based solely on the policy's provisions regarding disability and earnings.

If you wish to submit the recommended documentation, you may do so, and it will be reviewed in conjunction with the information already in Ms. Garay's file. You may direct this information to my attention at POB 180136, Chattanooga, TN 37415. If we do not receive any documentation that would allow us to change our calculations, our decision regarding the denial of Ms. Garay's claim remains final.

As stated in the first part of this letter, Ms. Garay's basic monthly earnings were based on the income information in effect at the time she became disabled. The policy does not contract that we use income information in effect at the end of the Elimination period, as those earnings would not represent her pre-disability earnings, which it is the intent of the policy to protect.

Review of the Work Incentive Benefit calculations on Ms. Garay's post-disability earnings in conjunction with the policy provisions regarding the same, confirms that it was done appropriately. It is the intent of the policy to commence the 12-month period with the commencement of post-disability earnings, rather than the end of the Elimination period as your letter seems to propose.

In your letter of August 15, 2003, you request information such as training and promotional material as well as claim payout information and information regarding litigation that has not resulted from Ms. Garay's claim. As this is information that was not utilized in our determination or administration of Ms. Garay's claim, it is not necessary for us to provide you with this information. With our letter of June 25, 2003, we provided you with a complete copy of all of the information Ms. Garay's claim contains, which in turn, was the sole source of information used in our denial determination.

UACL00481

Page 6 Sherri Garay

I am enclosing a copy of the checks Ms. Garay requested. Review of these checks reflects that she signed and deposited these monies in her bank account contrary to her claim that they were not received by her.

The sale of Ms. Garay's business would not be material to her claim, as it is not significant to a period of time that we had liability.

In prior correspondence, we advised that there was an outstanding overpayment on her claim. We are now referring Ms. Garay's claim back to our Customer Care Center for their review and processing to our Financial Recovery Unit. It is still our position that an outstanding overpayment of $29,315.55 exists on Ms. Garay's claim, and we maintain the contractual right to recoup this overpayment. In the event additional information changes our calculations, the overpayment will be adjusted accordingly.

Section 2695.7(b)(3) of the California Unfair Claims Settlement Practices Regulations requires that our company advise you that if you believe your claim has been wrongfully denied or rejected, you may have the matter reviewed by the California Department of Insurance at:

California Department of Insurance Claims Services Bureau

300 South Spring Street, 11th Floor

Los Angeles, CA 90013

(800) 927-4357 or (213) 897-8921

If you have any questions you may contact me at 1 800 451 8464 ext. 2348.

Sincerely,

Virginia Anne Jamieson
Senior Appeals Specialist
UNUM Life Insurance Company of America

UACL00482

**EXHIBIT 7**



October 16, 2003

Laurence Padway
1516 Oak Street
Suite 109
Alameda, CA 94501

Re:    Sherri Garay
       Disability Policy No. 108121
       Claim No: 99243598

Dear Mr. Padway:

We are in recent receipt of two attending physician's statements, and a statement of claim from Ms. Garay, which I have enclosed for your review. This information was not mailed to us under your cover head, though it is our understanding that you continue to represent Ms. Garay. In keeping with the guidelines of your representation, we are directing our response to you.

Review of this information indicates that it is a claim for benefits based on Ms. Garay's prior period of disability, which has already been adjudicated. In Ms. Garay's prior claim, her date of disability was established as September 5, 2001, and disability benefits commenced after the completion of the Elimination period on March 4, 2002. Benefits were paid through December 3, 2002, when the documentation made available to us indicated that she was no longer earning 20% less per month then her indexed pre-disability earnings due to disability. Ms. Garay was advised of our denial decision on March 3, 2003, and did exercise her appellate rights as afforded by the policy. My letters of April 24, 2003, June 17, 2003, and September 5, 2003 provide a response to Ms. Garay's appeals where we advised that based on our appellate review of all the information made available to us, the decision to deny ongoing liability remained appropriate.

In our letter of September 5, 2003, we advised you that if you wish to submit documentation outlined in our prior correspondence, you may do so, and it would be reviewed in conjunction with the information already in Ms. Garay's file. We asked that you direct this information to my attention at POB 180136, Chattanooga, TN 37415. We also advised you that if we do not receive any documentation that would allow us to change our calculations, our decision regarding the denial of Ms. Garay's claim remains final.

In my letter of September 12, 2003, I advised you that if Ms. Garay wished to consider another claim for a period of time after the liability ended on her prior claim, she may do so. The information recently submitted does not appear to be for a period of time after December 2, 2002, and as a result, can not be considered a new or recurrent claim.

UACL00495

Claimant Name: Sheri  Garay    Claim #: 322239

Page 2 Sherri Garay

Section 2695.7(b)(3) of the California Unfair Claims Settlement Practices Regulations requires that our company advise you that if you believe your claim has been wrongfully denied or rejected, you may have the matter reviewed by the California Department of Insurance at:

California Department of Insurance Claims Services Bureau

300 South Spring Street, 11th Floor

Los Angeles, CA  90013

(800) 927-4357 or (213) 897-8921

If you have any questions you may contact me at 1 800 451 8464 ext. 2348.

Sincerely,

Virginia Anne Jamieson
Senior Appeals Specialist
UNUM Life Insurance Company of America

UACL00496

Claimant Name: Sheri   Garay     Claim #: 322239

**EXHIBIT 8**



August 18, 2006

Sheri Garay
3326 Doral Court
Walnut Creek, CA  94598-3643


RE: Forms W-2C for 2003, 2004 and 2005
Claim Number: 0099243598 (2003), 0099872770 (2004-2005)
Policy Number: 108121


Dear Ms. Garay:

It was recently brought to our attention that you received 2003, 2004 and 2005 W-2's from Unum Life Insurance Company of America which reflected your earnings as 100% taxable. We have received verification from Site for Sore Eyes that your benefits should be 0% taxable.

Enclosed are Forms W-2C for 2003, 2004 and 2005 which correctly reflect the taxability of your earnings. If you have already filed your 2003, 2004 and 2005 tax returns, you may want to consult with your tax preparer about filing amended returns.

We will be sending you a refund of Social Security and Medicare withholdings from 2003 within a couple of weeks.

We sincerely apologize for any inconvenience this may have caused you and we appreciate your patience and understanding. If you have any questions, please contact the Tax Reporting Group at 1-800-845-2290.

Sincerely,


Unum Life Insurance Company of America
Benefit Operations Tax Reporting Group

Enclosures:  as stated

UACL02109

UnumProvident Corporation
Tax Reporting Group
2211 Congress Street
Portland, ME 04104-9828
Phone: 1-800-845-2290
Fax: 207-575-7794
www.unumprovident.com

Legal Tabs Co. 1-800-322-3022

Recycled    Stock # R-EX-5-B

**EXHIBIT  9**



December 1, 2006


SHERI GARAY
3326 DORAL COURT
WALNUT CREEK, CA 94598-3643




RE:    Garay, Sheri                    DOB: July 17, 1952
       Claim Number:                   1081100
       Policy Number:                  108121
       Unum Life Insurance Company of America



Dear Ms. Garay:

Thank you for your letter to me dated November 06, 2006.  This letter is a follow-up to that letter.

We had originally addressed your concern over back dating the disability date and were unable to resolve this situation based on information on file.  If you would want your file to be audited by our Appeals Department, then we request that you send us a letter specifically requesting an appeal for the reasons you listed in your November 6, 2006.

Ms. Garay, if you have any questions, please feel free to contact me at 1-877-851-7637.

Sincerely,

*Philip Popovich*

Philip Popovich
Lead Disability Benefits Specialist
Unum Life Insurance Company of America


Enclosures:    Communication: Routine

Unum Life Insurance Company of America
The Benefits Center
PO Box 100158
Columbia, SC 29202-3158
Phone: 1-877-851-7637
Fax: 1-877-851-7624
www.unumprovident.com

1242-03

UACL02153

Legal Tabs Co. 1-800-322-3022

Recycled  Stock # R-EX-5-B

**EXHIBIT 10**



January 19, 2007


SHERI GARAY
3328 DORAL COURT
WALNUT CREEK, CA 94598-3643




RE:    Garay, Sheri                    DOB: July 17, 1952
       Claim Number:                   1081100
       Policy Number:                  108121
       Unum Life Insurance Company of America


Dear Ms. Garay:

Thank you for your letter to us on December 04, 2006. This letter is a follow-up to that letter.

You had requested that your file be audited by our Appeals Department.   The Appeals Department has first asked that I address the issues you presented and if you are in disagreement, you may then appeal the decision in writing and fax the appeal to (207) 575-2354.

It appears that you are disputing the calculation of the overpayment on your closed claim (322239). This claim was originally opened with a date of disability of September 5, 2001 and benefits were paid from March 4, 2002 through December 3, 2002. It was later determined that you did not have a sufficient income loss so the claim was closed and it was determined that you had an overpayment of $29,315.55.

Another claim was opened with a date of disability of September 4, 2003 and the overpayment from the previous claim was applied to the new claim (1081100) that remains open.

It was later determined that this income should not have been taxable as you had paid from post-tax dollars for your insurance premium. You were reissued W-2's for 2003, 2004, and 2005 and this benefit should not have been taxable.

The year 2002 was not addressed because you were repaying this overpayment for that year and so did not receive income for 2002.

Unum Life Insurance Company of America
The Benefits Center
PO Box 100158
Columbia, SC 29202-3158
Phone: 1-877-851-7637
Fax 1-877-851-7624
www.unumprovident.com

1242-03

UACL02173

Claimant Name: Garay, Sheri
Claim Number: 1081100

January 19, 2007
Page 2 of 3

You are disputing that the overpayment amount was incorrect as it was based on your gross benefit but you should not have been taxed.

Our Financial Department is reviewing this issue at this time and we will inform you of the results. Please note that there is still an overpayment from your Social Security award.

Your second issue was that you indicated that there never should have been a "waiting period" for your new claim (1081100) since "this was all part of the original injury and claim".

It appears from "waiting period" that you meant elimination period. "Waiting period as shown in the certificate rider, means the continuous length of time you must serve in an eligible class to reach your eligibility date". Waiting period is the date that your long term disability insurance coverage begins.

"Elimination period means a period of consecutive days of disability for which no benefit is payable. The elimination period is shown in the certificate rider and begins on the first day of disability." Elimination period in your case is 180 days.

Your disability begins when you meet the definition of disability.

"'Disability' and 'disabled' mean that because of injury or sickness:

1.  the insured cannot perform each of the material duties of his regular occupation; and
2.  after benefits have been paid for 24 months, the insured cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted by training, education, or experience; or
3.  the insured, while unable to perform all of the material duties of his regular occupation on a full-time basis, is:
    a.  performing at least one of the material duties of his regular occupation or another occupation on a part-time or full-time basis; and
    b.  earning currently at least 20% less per month than his indexed pre-disability earnings due to that same injury or sickness."

"The Company, at its own expense, will have the right and opportunity to have an employee, whose injury or sickness is the basis of a claim, examined by a physician, other health professional, or vocational expert of its choice. This right may be used as often as reasonably required."

A disability needs to meet both the impairment and sufficient income loss. Since you did not meet the sufficient income loss until September 4, 2003, that was determined to be your disability date. Your elimination period begins on your date of disability. Your elimination period extended from September 4, 2003 through February 28, 2004.

We will provide you with the result of the review of the overpayment issue. If you disagree with our decision you may then appeal this decision in writing.

UACL02174

*Claimant Name: Sheri Garay    Claim #: 1081100*

Claimant Name: Garay, Sheri
Claim Number: 1081100

January 19, 2007
Page 3 of 3

Ms. Garay, if you have any questions, please feel free to contact me at 1-877-851-7637.

Sincerely,

*Philip Popovich*

Philip Popovich
Lead Disability Benefits Specialist
Unum Life Insurance Company of America

UACL02175

*Claimant Name: Sheri   Garay     Claim #: 1081100*

**EXHIBIT 11**



February 5, 2007


SHERI GARAY
3326 DORAL COURT
WALNUT CREEK, CA 94598-3643




RE:    Garay, Sheri                    DOB: July 17, 1952
       Claim Number:                   322239
       Policy Number:                  108121
       Unum Life Insurance Company of America



Dear Ms. Garay:

We are writing to let you know that we received your recent letter requesting a review of your
Long Term Disability claim.

However, in reviewing your letter and the claims on our system it appears that the issues you
cite with regard to the decision issued on your claim # 0099243598/322239 which is currently
assigned to Carol Lewis, in our Claims Reassessment Unit (CRU) by virtue of the fact that you
opted into that review process.

Specifically, you have taken issue with the closure of that claim as premature, and noted that
your current open and payable claim (0099872770/1081100) being handled by Phillip Popovich
in Glendale should not be a new claim, but a continuation of the prior claim. There is also an
overpayment on the claim (0099243598/322239) assigned to CRU which has been rolled into
the overpayment due to the award of Social Security Disability Insurance (SSDI) on the open
claim (0099872770/1081100), and the combined amount is being pursued for reimbursement by
our Financial Recovery Unit (FRU). There also appears to be a tax issue related to withholdings
on the CRU claim that remains outstanding, and is being handled by Catherine Kane of our Tax
Department.

Upon review of the issues raised, we do not find any of these issues can be considered on
appeal as the issues to be addressed arise from the claim pending with CRU and the
reassessment has not been finalized. The only administrative remedy available to you currently
on those issues that have arisen directly on claim number (0099243598/322239) is through the
Claims Reassessment Unit. Accordingly, we would direct you to contact Disability Benefits

Unum Life Insurance Company of America
The Benefits Center
PO Box 100158
Columbia, SC 29202-3158
Phone: 1-800-858-8843
Fax: 1-800-447-2498
www.unumprovident.com

1242-03

UACL00582

Claimant Name: Sheri Garay      Claim #: 322239

Consultant Ms. Carol Lewis (423) 294-1260 to set expectations on the issues to be addressed by CRU.

In addition, we would direct you to contact Phillip Popovich as the Disability Benefits Specialist for all issues dealing directly with the open claim (0099872770/1081100). Our Financial Recovery Unit will deal with recovery of the overpayment once they have been provided with the information necessary from CRU when that decision has been finalized. The Claims Reassessment Unit will keep you advised periodically on the status of their investigation and claims decision. Our Financial Recovery Unit will provide you with updates periodically as information become available to them from their partners assigned to the respective claims referenced above.

If you have any questions, please feel free to contact me at 1-800-858-6843.

Sincerely,

*Domenic Palleschi AIC, HIA*

Domenic Palleschi AIC, HIA
Appeals Consultant
Unum Life Insurance Company of America

UACL00583

1242-03

**EXHIBIT 12**



May 4, 2007


Sheri Garay
3326 Doral Ct.
Walnut Creek, CA 94598


RE:    Sheri Garay              DOB:   7/17/52
       Claim Number:                   99243598
       Policy Number:                  108121
       Unum Life Insurance Company of America


Dear Ms. Garay:

We are writing to let you know that we have completed the reassessment of the denial of your Long Term Disability claim. We have determined that you are due benefits for a closed period of time.

You filed a claim for Long Term Disability (LTD) commencing 9/5/01 due to Herniated Cervical Discs. Your claim was denied because you did not have an earnings loss as required by your policy. No benefits were provided.

You have stated that you disagree with our decision because your tax returns were not properly evaluated and your 2003 returns were never looked at.

The provisions of the Long Term Disability policy relevant to your claim are as follows:

"DEFINITION OF DISABILITY

"Disability" and "disabled" mean that because of injury or sickness:

1. you cannot perform each of the material duties of your regular occupation; and

2. after benefits have been paid for 24 months, you cannot perform each of the material duties of any gainful occupation for which you are reasonably fitted by training, education or experience; or

3. you, while unable to perform all of the material duties of your regular occupation on a full-time basis, are:

Unum Life Insurance Company of America
Claim Reassessment Unit
PO Box 9728
Portland, ME 04104-5028
Phone: 1-866-278-4641
Fax: 1-866-314-1474
www.unumprovident.com

1242-03

UACL00700

Claimant Name: Sheri Garay    Claim #: 322239

a. Performing at least one of the material duties of your regular occupation or another occupation on a part-time or full-time basis; and
b. Currently earning at least 20% less per month than your indexed pre-disability earnings due to that same injury or sickness.

Note: Reference to a partial disability, in the accompanying booklet which describes your benefits, does not apply to you when you have this definition of disability."

**"When do disability benefits for partial disability become payable?**
When we receive proof that you are partially disabled within 31 days of the end of a period during which you received disability benefits, we will pay a monthly benefit. The partial disability must result form the injury or sickness that caused disability.

But, if you are earning more than 20% of your indexed pre-disability earnings in your regular occupation or another occupation, then the monthly benefit will be figured as follows:

1. During the first 12 months, the monthly benefit will not be reduced by any earnings until the gross monthly benefit plus your earnings exceed 100% of your indexed pre-disability earnings. The monthly benefit will then be reduced by that excess amount.

2. After 12 months, the following formula will be used to figure the monthly benefit.

$$(A \text{ divided by } B) \times C$$

A = Your "indexed pre-disability earnings' minus your monthly earnings received while you are disabled.
B = Your "indexed pre-disability earnings".
C = The benefit as figured above.

The benefit payable will never be less than the minimum monthly benefit shown in the certificate rider. "

Your policy further states:

**"When do these benefits cease?**
Disability benefits will cease on the earliest of:

1. the date you are no longer disabled;
2. the date your die;
3. the end of the maximum benefit period;
4. the date your current earnings exceed 80% of your indexed pre-disability earnings."

The issue raised in your claim was whether, under the terms of the policy, you had the required loss of income.

In reassessing your claim, we did the following: reviewed your entire claim file, reviewed all the information and material you submitted with your reassessment information form, reviewed the additional information you faxed to us on 4/23/07 and 4/25/07, spoke with you on the phone, and had a financial analysis completed by a Certified Public Accountant.

UACL00701

1242-03

The information in your file indicates that you did not work from 9/5/01 to 6/10/02, when you returned to work on a part-time basis (as indicated by you in the Claimant's Statement). You indicated in an affidavit signed on 8/9/03 that you had continued to work part-time and were still working part-time as of that date. We understand that you stopped working on 9/4/03 and underwent additional surgery.

As a result of direction from the California Department of Insurance, we will administer the policy's definition of disability as described below.

<u>Provident Life and Accident Insurance Company defines Usual Occupation as:</u>

> The definition of disability contained in your policy references a period during which you are unable to perform the material and substantial duties of your own occupation. You will be determined to be disabled from your usual occupation when you are rendered unable to perform with reasonable continuity the substantial and material acts necessary to pursue your usual occupation in the usual and customary way.

Your usual occupation may be defined in the policy as it is performed in the national economy. However, we will evaluate your usual occupation to be the "occupation you are routinely performing for your Employer when your disability begins".

Your file was referred for a Financial Analysis. After reviewing all of the financial information provided and available in your file, it was concluded that your earnings were in excess of 80% of your indexed pre-disability earnings for the years of 2002 and 2003. A copy of the calculations are enclosed for your review.

Your policy provides a 180 day elimination period, during which no benefits are payable, This ended on 3/4/02. Since you were unable to work from 9/5/01 until you returned to work part-time on 6/10/02, you were considered totally disabled, in accordance with the California Settlement Agreement. Therefore, we are providing benefits for this period of time.

At the time you returned to work in 6/02, you were considered partially disabled. The California Settlement Agreement indicates that an earnings loss is still required to satisfy the definition of disability where the insured is not totally disabled but is partially or residually disabled.

As indicated above, your policy states that benefits cease on the date your current earnings exceed 80% of your indexed pre-disability earnings. Taking into consideration all of the definitions for partial disability, we find that no benefits are due when you became partially disabled on 6/10/02 as your earnings were greater than 80% of your indexed pre-disability earnings.

A check in the amount of $15,991.81 representing benefits from 3/4/02 through 6/9/02 is being mailed under separate cover.

A check in the amount of $5,456.61 representing the interest due is also being mailed under separate cover.

1242-03

UACL00702

Claimant Name:  Sheri  Garay    Claim #:  322239

Please be advised that the benefits you will receive may be considered taxable. Interest payments you receive are taxable.

If your benefits are taxable or if you receive any interest payments, you will receive a tax form next year indicating the amount of benefits paid to you for the prior year as well as the amount of taxes withheld, if any.

UnumProvident cannot or does not warrant or represent any tax consequences of these benefits payments and /or interest to you. You should consult your own tax advisor of any tax consequences.

You were approved for Social Security Disability benefits with a date of disability of 1/1/04. You currently are receiving benefits under Claim # 99872770. This claim was given a disability date of 9/4/03, when you stopped working entirely, and benefits began on 3/1/04.

We have concluded the reassessment of your claim. If you disagree with the results of the reassessment, you have the right to request an Independent Review of the decision. This review will be based on the information contained in your claim file. You must submit your request in writing within 30 days of the date of this letter. Your letter should be addressed to:

    California Settlement Independent Review Director
    c/o UnumProvident
    P.O. Box 9719
    Portland, Maine 04104

Please include your claim number in your letter.

Ms. Garay, if you have any questions, please contact me at 1-866-278-4641, extension 41260.

Sincerely,


Carol Lewis, ALHC, HIA
Claim Reassessment Consultant
Unum Life Insurance Company of America

UACL00703

1242-03

Claimant Name: Sheri Garay    Claim #: 322239

**EXHIBIT 13**

Claim Document
------------------------------------------------------------------------------------

                    Type: Received call

                 Subject: Call from Claimant

                Priority: No

                  Status: Completed

                   Notes:


        5/21/07

        Ms. Garay called to see if I had received the faxed information and I
        advised that I had.

        She indicated that she was totally disabled and did not work but a short
        period of time. I advised her of the affidavit signed on 8/9/03 in the
        file which indicated she worked part time at least thru that date. She
        indicated that wasn't correct. I advised her that we based our deciison
        upon the information in file and that our review is completed. If she
        disagrees, she will need to file for the independent review. She indicated
        that she would file thru this process.

        She also had questions regarding the tax department indication that part of
        her overpayment for the FIT deduction should be waived. I explained that
        Philip Popovich is handling that as he is the DBS for her current claim.

        Carol Lewis




            Created By: Lewis, Carol
          Created Date: 05/22/2007 - 11:25:15
           Create Site: Chattanooga

          Completed By: Lewis, Carol
        Completed Date: 05/22/2007 - 11:25:15
         Complete Site: Chattanooga
        ------------------------------------------------------------------------------------

UACL00963

---

*Claimant Name: Sheri  Garay     Claim #:  322239*

Legal Tabs Co. 1-800-322-3022

Recycled    Stock # R-EX-5-B

**EXHIBIT 14**



August 15, 2007

<u>Original Recipient</u>

STEVEN BRUNELLE
CALIFORNIA DEPARTMENT OF INSURANCE
CLAIMS SERVICES BUREAU
300 SOUTH SPRING STREET
LOS ANGELES, CA 90013

SHERI GARAY
3326 DORAL COURT
WALNUT CREEK, CA 94598-3643

RE:    Garay, Sheri              DOB: July 17, 1952
       Claim Number:             322239
       Policy Number:            108121
       Unum Life Insurance Company of America

       Claim Number:             1081100
       CA File Number:           CSB-6270290
       NAIC Number:              0565-62235

Dear Ms. Garay:

We are in receipt of a letter from Mr. Steven Brunelle with the California Department of Insurance. Mr. Brunelle has advised us of your complaint and requested that we review your concerns and respond directly to you.

In the above referenced correspondence you contend that Unum has used deceptive practices, practiced bad faith in the handling of your disability claim and has used stall tactics and invented false reasons in identifying your overpayments and in the closure of your claim.

We respectfully disagree with your accusations and mischaracterization of the facts.

After reviewing LTD claim number 322239 our records confirm that on February 15, 2007 we responded to the same complaint issues. At that time we reminded you that the California Settlement Agreement reassessment of your claim was in progress and your complaint issues were being reviewed and a decision would be made on them when the reassessment was completed. On May 4, 2007 the reassessment was completed and you were provided with a detailed explanation of our findings, the rationale of the claim decision and benefit payments of $15,991.81. This letter also contained information informing you that if you disagreed with the results of the reassessment you had the right to request an Independent Review of the decision by submitting a written request to the California Settlement Independent Review Director. You elected to request an Independent Review of the reassessment decision on the above claim and submitted your written request. The Independent Review was completed and it determined

Unum Life Insurance Company of America
The Benefits Center
PO Box 100158
Columbia, SC 29202-3158
Phone: 1-800-858-6843
Fax: 1-800-447-2498
www.unumprovident.com

1242-03

Claimant Name:  Sheri  Garay     Claim #:  322239

that Unum's decision on your claim was appropriate.  You were advised of this via our August 13, 2007 letter.  At this time no additional reviews are available on claim 322239.

In regard to claim number 1081100, this is currently open and has an overpayment of $36,821.27.  The information in this claim file shows that Jessica Normand is currently reviewing the SSDI overpayment calculation and will be contacting you with the results of her review.

We regret your dissatisfaction with our claim investigation and the resulting decisions.

Ms. Garay, if you have any questions, please feel free to contact me at 1-800-858-6843.

Sincerely,

*Noel Haynes*

Noel Haynes
Appeals Consultant
Unum Life Insurance Company of America


CC:         Steven Brunelle/California Department of Insurance

UACL01030

1242-03

Claimant Name: Sheri  Garay    Claim #: 322239