THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SHERI GARAY,

    Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY
OF AMERICA, and DOES 1-10,

    Defendants.

Case No. 08-01059 SBA

**ORDER**

[Docket No. 17]

Before the Court is defendant's Motion for Partial Summary Judgment on the Applicability of the Employee Retirement Income Security Act (ERISA) [Docket No. 17].

**BACKGROUND**

Plaintiff Sheri Garay ("plaintiff") was the sole proprietor of Site for Sore Eyes from 1989 through December 2003. On October 2, 1995, plaintiff executed an *Application for Participation in the Select Group Insurance Trust* ("Application"). Site for Sore Eyes paid the initial premium for the period from October 1, 1995 to October 31, 1995. Based on the Application and the payment of the initial premium, defendant UNUM Life Insurance Company of America ("defendant") issued the Group Long Term Disability Benefits Plan, Identification No. 108121 (the "Plan"), to Site for Sore Eyes, with an effective date of October 1, 1995. In December of 2003, plaintiff sold Site for Sore Eyes to New Age Optical and all of the employees were terminated.

In 2001, plaintiff began to struggle with severe symptoms of degenerative spine disease and eventually applied for long-term disability benefits in June 2002. In January 2008, plaintiff sued defendant in Contra Costa County Superior Court for breach of contract and other relief. On February 21, 2008, defendant removed the action to federal court contending that plaintiff's claims

under the Plan were governed by ERISA. On June 17, 2008, defendant filed the present motion for partial summary judgment on the applicability of the ERISA. The primary issue before the Court is whether plaintiff's state law claims are preempted by ERISA.

## **LEGAL STANDARD**

The judgment sought in a motion for summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Hart v. Parks*, 450 F.3d 1059, 1065 (9th Cir. 2006). As to materiality, the substantive law will identify which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Miller v. California*, 212 Fed. Appx. 592 (9th Cir. 2006). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248; *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 785 (9th Cir. 2002). Summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own leading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e)(2).

## **DISCUSSION**

### I. **ERISA**

The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person. *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir. 1988). To determine whether an insurance plan is an ERISA plan, a district court should consider 29 U.S.C. § 1002(1), which defines an employee welfare benefit plan, and 29 C.F.R. § 2510.3-1(j), which clarifies the meaning of "establishing and maintaining" such a plan. *The Meadows v. Employers Health Ins.*, 826 F. Supp.

2

1225, 1228 (D. Ariz. 1993). Under 29 U.S.C. § 1002(1):

> The terms "employee welfare benefit plan" and "welfare plan" mean any plan . . .which was . . . established or maintained by an employer . . . to the extent that such plan . . . was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . disability. . . benefits . . .

29 U.S.C. § 1002(1).

Under 29 C.F.R. § 2510.3-1(j):

> the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j).

If the plan covers one or more employees as well as the business owner, the plan is governed by ERISA. *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 6 (2004).

**II.   Plaintiff's Insurance Plan**

Defendant argues that the plaintiff's Plan is governed by ERISA. Correspondingly, defendant contends that plaintiff's potential remedies are limited to those provided under ERISA. Defendant asserts that the Application, the Plan, the Long Term Disability Mini-Plan Proposal, and the Declaration of Anna M. Stein, Assistant Vice President, Regional Operations, Client Service Center for defendant, conclusively establish that the Plan was a Group Long Term Disability Plan, established by plaintiff on behalf of her business, Site for Sore Eyes, which covered the business's

3

eligible, "active" employees including plaintiff. According to defendant, such evidence also establishes that under the Plan, 1) the sole participating employer is "Site for Sore Eyes," 2) the eligible class of participants is described as "All employees of each participating employer," 3) coverage can be terminated if the number of covered employees ever falls below two; 4) that at the inception of the Plan, three employees were covered as well as plaintiff, 5) at the time plaintiff applied for benefits, the Plan still covered multiple employees, and 6) at no time between the establishment of the Plan and the date plaintiff sold her business did the Plan ever cover fewer than two employees.

The Application, provides, in pertinent part:

> To: The Trustee(s) of The Select Group Insurance Trust and UNUM Life Insurance Company of America
>
> Name of Employer/Applicant: *Sheri A. Garay dba Site For Sore Eyes*
> . . . .
> requests approval to participate in the above named Insurance and for its eligible employees under the terms of the group policy(ies) issued to the Trustee(s) of the Trust for the following coverage(s):
>
> . . . .
> Group Long Term Disability Benefits
>
> By this application, the Employer/Applicant:
> 1. agrees and accepts the terms of the Trust Agreement (including all amendments to the Trust Agreement) for the Insurance Trust named above for so long as it elects to participate in the Trust:
> 2. agrees to remit regularly the required premium payments; and
> 3. elects coverage as shown in the Summary of Benefits and agrees that only those provisions which appear in the Summary of Benefits provided to the Employer/Applicant apply to its insurance coverage.
>
> Dated at *Concord, CA*
> By (Employer/Applicant) [*signature of Sheri Garay*]
> on *10-2-95* By [*signature of agent/broker*]

(Stein Decl. Ex. A, at UACL01206.)

In the Certificate of Coverage, the Plan states "Unum Life Insurance Company of America . . . welcomes your employer as a client. (*Id.* at UACL00072.) A rider to the Plan states that the participating employer is "Site for Sore Eyes" and describes the eligible class of participants under

**United States District Court**
For the Northern District of California

4

"DESCRIPTION OF ELIGIBLE CLASSES" as "All employees of each participating employer." (*Id.* at UACL01201.) Under the "CONTRIBUTIONS" section, the Plan states that "The cost of insurance is paid entirely by your employer." (*Id.* at UACL01202.) Under "ENROLLMENT AND DATE INSURANCE STARTS" the Plan provides that "You can enroll if you are: 1) in active employment with your employer; and 2) in a class eligible for insurance. (*Id.* at UACL00077.) According to the Long Term Disability Mini-Plan Proposal dated October 6, 1995, which was prepared for Sheri Garay and Site for Sore Eyes, Inc., plaintiff was seeking long term disability benefits coverage for herself and three other employees: 1) Sherri A (Sales); 2) Wayne C (Lab Tech); 3) Sheri Garay (Owner-Sales); and 4) Stacy S (Sales)."

Anna Stein, Assistant Vice President for defendant, responsible for "overseeing billing functions," "overseeing new business functions, including the issuance of contracts and initial customer deliverables for non standard Home Office issued business"; and "overseeing the premium collection and accounting functions" testifies that:

> The initial premium was paid for the period from October 1, 1995 to October 31, 1995 by Site For Sore Eyes and UNUM issued the Group Long Term Disability Benefits Plan, Identification No. 10821, to Site For Sore Eyes, Inc. with an effective date of October 1, 1995. The Plan initially covered Sheri Garay [plaintiff] and three employees of Site For Sore Eyes. The three other employees were not owners of the business Site For Sore Eyes. Ms. Garay established the Plan by arranging the issuance of the Plan to Site For Sore Eyes to provide disability insurance to Ms. Garay and the eligible employees of Site For Sore Eyes. Moreover, Ms. Garay maintained the Plan by making all premium payments for herself and the eligible non-owner employees of Site For Sore Eyes.
>
> . . . .
>
> The Plan remained in effect covering the employees of Site For Sore Eyes, with Sheri Garay as sole owner, until Site For Sore Eyes was sold . . . From the inception of the Plan on October 1, 1995 through January, 2004 (when Site For Sore Eyes was sold to new owners), the Plan continuously insured at least one other non-owner employee . . . At no time was plaintiff Sheri Garay the sole plan participant. For example, non-owner, employee Sherri A. was a Plan participant from October 1, 1995 (the inception of the Plan) through the date of her termination of employment on March 20, 2004, which was after Site For Sore Eyes was sold to new owners.

5

(Stein Decl. ¶¶ 1, 8, 9.)

The foregoing evidence adduced by defendant establishes that the plaintiff arranged for a disability insurance plan to cover herself as well as other employees at Site For Sore Eyes and that plaintiff maintained the plan by paying monthly premiums from the time of the Plan's inception to the time when plaintiff sold Site For Sore Eyes. Indeed, plaintiff herself admits that she made all of the premium payments on behalf of Site For Sore Eyes' employees. (Garay Decl. ¶ 6.) Accordingly, unless plaintiff can set out specific facts showing that there is a genuine issue to the contrary, the Plan is covered by ERISA and plaintiff's remedies under the Plan shall be governed by ERISA. *See* Fed. R. Civ. P. 56(e)(2).

Plaintiff offers five points in opposition: 1) that her Long Term Disability Benefits Policy is not governed by ERISA because she did not "establish" nor "maintain" the plan; 2) the Plan falls under ERISA's so-called safe harbor provisions; 3) that defendant cannot prevail on its motion due to principles of waiver and estoppel; 4) that because there are no longer any covered employees under the Plan, holding that ERISA does not apply is "logical"; and 5) that additional discovery will establish that her plan was separate from that of her employees.

### a. Establishment and Maintenance of the Plan

Plaintiff argues that ERISA does not govern the Plan because she did not "establish" or "maintain" the Plan. Plaintiff contends that when she first approached an insurance broker in 1995 to purchase the policy, she specifically sought an individual policy but was convinced to buy a group policy. Plaintiff explains that the policy in question nowhere references ERISA, thus evidencing that neither plaintiff nor defendant intended the policy to be covered by ERISA. Plaintiff argues that "an employer does not establish a plan merely by acting as a conduit for paperwork and premiums to the insurance company."

However, as defendant argues in its reply, whether plaintiff was "convinced" to purchase the group long term disability insurance plan does not in any way suggest that she did not "establish" the plan. The evidence shows that plaintiff applied for the Plan and thereafter maintained it by paying

6

all premiums due for all of its participants.

Plaintiff cites *Zavora v. Paul Revere Life Ins. Co.*, 145 F.3d 1118 (9th Cir. 1998) in support of her claim that she did not establish or maintain the Plan. In *Zavora*, the Ninth Circuit found that the circumstances of the plan at issue in the case established that the plan could have fallen within ERISA's safe harbor provisions. However, *Zavora* is factually distinguishable from the present case. Here, plaintiff's argument that she did not maintain her plan is based on nothing more than her contention that her insurance broker "convinced" her to purchase the plan and her entirely conclusory assertion that she acted as a mere conduit for paperwork and payment of premiums. In *Zavora*, however, the Ninth Circuit found that the plan fell within the safe harbor provision because, inter alia, the employees paid the entire premiums for the plan. In the present case, it is undisputed that plaintiff paid all premiums due under the Plan for herself and all Site For Sore Eyes employees. Thus, *Zavora* is unavailing.

### b. ERISA's Safe Harbor Provisions

Plaintiff contends that ERISA does not preempt the plan due to ERISA's safe harbor provisions. Under 29 C.F.R. § 2510.3-1(j) (commonly referred to as the safe harbor provisions), if an employer satisfied four conditions, its plan is not deemed to be an employee benefit plan under ERISA and therefore any remedies under such a plan are not preempted by ERISA. The factors are:

> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation in the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j).

7

Plaintiff argues that she did not require her employees to enroll in the plan, she did not endorse or promote the plan, and she did no more than mail defendant enrollment forms and premiums. However, plaintiff admits that she paid the premiums for the plan, although she asserts that "[she] did not want to pay for her employee's premiums - and did not do so for the life insurance benefits - but only did so for the disability benefits because it was a term of the disability benefits policy required by Unum, a sophisticated corporation."

First, plaintiff acknowledges that she no longer has access to her payroll records to substantiate her claim that she deducted life insurance payments from her employee's paychecks. And, while plaintiff may not have "wanted" to pay the premiums for her employees, plaintiff herself admits that she did not deduct the premiums from payroll, and that the Plan would not allow for payroll deduction. As defendant argues, plaintiff maintained the Plan by paying the entire cost of the Plan, "and doing so not just once, but monthly between 1995 and 2003." Accordingly, plaintiff fails to meet all of the requirements of the safe harbor provision.

### c. Waiver and Estoppel

Plaintiff contends that defendant waived ERISA preemption because it did not timely raise this defense during the administrative remedies plaintiff pursued. Plaintiff also argues that defendant failed to advise her of her "ERISA rights" throughout the four plus years of handling her disability claim, and presumably, as a result, defendant is now estopped from raising an ERISA preemption defense.

Defendant argues that plaintiff has not identified any specific right that defendant failed to advise her of, but only that defendant failed to use the word ERISA when it advised her of those rights. Defendant contends that plaintiff's argument lacks any merit because defendant repeatedly advised plaintiff of her rights under the Plan, including a thorough explanation for the benefit denial, the method and timeframe for appealing the decision, how long the appeal will take, plaintiff's opportunity to submit additional information in support of her appeal, the specific information the appeal response would provide, and the method for contacting the California Department of

Insurance.

The evidence in the record supports defendant's claims, namely a letter dated March 3, 2003 from defendant to plaintiff explaining her benefits under the Plan, denying her claim, and providing her with information regarding appeal and independent review of the denial (*See* Garay Decl. Ex. 3.) Moreover, plaintiff fails to identify a single right under the Plan or under ERISA of which defendant failed to advise her.

While plaintiff argues that defendant waived its ERISA preemption defense by not raising it during the administrative remedies plaintiff pursued, plaintiff provides no authority to support this claim. Indeed, as explained by the case upon which plaintiff relies, an ERISA preemption defense *may* be waived if not timely raised in a benefits-due *action*. *Saks v. Franklin Covey Co.*, 316 F.3d 337, 349 (2d Cir. 2003). Moreover, while a plan participant must exhaust the administrative remedies mandated by ERISA, 29 U.S.C. § 1133, before filing a suit, *LaRue v. DeWolff, Boberg & Assocs.*, 128 S. Ct. 1020, 1027 (2008), plaintiff does not explain why a party would ever need to raise an ERISA preemption defense during an ERISA-mandated administrative proceeding, and therefore fails to explain why failing to raise such a defense constitutes a waiver.

### d.  No Currently-Covered Employees

Plaintiff explains that Site for Sore Eyes ceased operations in 2004 and all of its employees were terminated pursuant to a new business opening up in its stead. In light of this, plaintiff argues that "holding that Sheri Garay's plan is not governed by ERISA is logical as there no longer is any covered employees under the Site for Sore Eyes plan, nor any plan administrator for the Site for Sore Eyes Plan." Plaintiff's only purported authority for this position is *Waks v. Empire Blue Cross/Blue Shield*, 263 F.3d 872 (9th Cir. 2001). However, *Waks* is entirely inapposite to plaintiff's case.

In *Waks*, the insured was initially covered under a group plan subject to ERISA regulation. However, her claims were based on the insurer's conduct after she had converted her group coverage to an individual policy. The Ninth Circuit held that to be governed by ERISA, an "employee benefit

9

plan must cover at least one employee to constitute an ERISA benefit plan." *Id.* at 875. The *Waks* court explained that "an individual insurance policy is not subject to ERISA solely because it was created through the conversion of a group policy that was subject to ERISA." *Id.* at 874.

The present case is distinguishable from *Waks* because plaintiff's claims relate to defendant's conduct prior to plaintiff's sale of her company and therefore the claims arose during the time plaintiff maintained the Plan for Site for Sore Eyes. Additionally, plaintiff never converted her policy to an individual plan nor argues that her plan was ever converted to an individual plan. Thus, plaintiff's argument falls flat.

### e.  Separate Policy and Additional Discovery

Plaintiff contends that a separate, independent plan issued to her as opposed to her employees. Plaintiff argues that if she can establish this contention through discovery, she will prevail in her opposition to defendant's motion for partial summary judgment because she will prove her policy was not governed by ERISA. Under Federal Rule of Civil Procedure 56(f), "[i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order. Fed. R. Civ. P. 56(f).

In support of her contention that another policy exists and that further discovery is needed to find it, plaintiff argues that she in good faith believes she held a separate policy based on the difference in the booklet issued to her as opposed to her employees. Plaintiff also argues that early letters sent to her by defendant referenced her policy number as "0108121-0001." According to plaintiff, later letters drop the "-0001" from the policy number, which allegedly raises a question as to whether the employees of Site for Sore Eyes had a different policy, numbered 0108121-0002 or some different number. Plaintiff also contends that she is in possession of a rider addressed to "Sheri A. Garay" which was not produced by defendant in its initial disclosures along with plaintiff's claims file. According to plaintiff, this raises the question as to whether other plan documents,

riders, booklets, letters, or other documentary evidence exists which applies to Plaintiff's policy and not the policy of her employees.

Defendant explains that although plaintiff may have received a rider with her name on it as opposed to Site for Sore Eyes, that does not mean that there was a second policy in plaintiff's name, independent of the policy for Site for Sore Eyes. Defendant points out that the rider with plaintiff's name at the top is identical to the rider attached to the policy in every way, besides the name, including the Group Identification Number, 108121, which is the number for the Plan. Ms. Stein also explains in her supplemental declaration that:

> Ms. Garay asserts that because Riders have either the name Sheri Garay or Site for Sore Eyes that this demonstrates that she had individual disability insurance coverage. Ms. Garay is mistaken. The Riders clearly list the group policy/identification number 108121. The name on each of the Riders were manually typed into a word template utilized in UNUM's sales office. Ms. Garay's name was typed on the Rider as she was the sole proprietor who arranged for and purchased the group long term disability coverage for herself and her employees.

(Supp. Stein Decl. ¶ 5.)

Defendant next addresses plaintiff's contention that some letters sent to her referred to policy number 0108121-0001, leading her to believe that her employees may have had a different policy, numbered 0108121-0002. Defendant explains that:

> The number 108121 is the group number associated with the disability insurance contract. The number 001 represents the billing division for Sheri Garay dba Site for Sore Eyes. Many UNUM customers have more than one billing division. Site for Sore Eyes had only one billing division. Almost all items related to billing contain both the policy and division numbers 108121-001. . . As to Ms. Garay's assertion that the number 108121-002 appears on documents that she received, this would be a mistake as there has never been a billing division 002 for Sheri Garay dba Site for Sore Eyes. I have not seen any documents where the number 108121-002 appears. Number 108121 is the policy number/group identification number assigned to Sheri Garay dba Site for Sore Eyes. When Site for Sore Eyes was sold to new owners in January, 2004, the group long term disability coverage continued to cover the new owners and its employees.

(Supp. Stein Decl. ¶ 6.)

11

Finally, defendant argues that plaintiff's claim that defendant has not produced critical documents relevant to ERISA preemption is false and unfounded. Defendant argues that, as part of its initial disclosure, it disclosed and provided a copy of the Plan and the claim file, and identified by category and location the documents pertaining to: 1) the issuance of the Long Term Disability Coverage to the employee group, Site for Sore Eyes; 2) the premiums billed for the Long Term Disability Coverage for Site for Sore Eyes; 3) the premiums collected for the Long Term Disability Coverage for Site for Sore Eyes; and 4) the employees removed and added as insureds under the Site for Sore Eyes Long Term Disability Coverage, Group Identification Number 108121. (Martin Decl. Ex. A, Unum's Initial Disclosure)

Defendant further explains that as part of its motion for partial summary judgment, it submitted the Declaration of Anna Stein, which included a copy of the Plan itself, copies of documents pertaining to the issuance of the Plan, copies of documents pertaining to premiums billed and paid and the addition and removal of insured employees under the Plan, and copies of documents pertaining to plaintiff's claim. (Stein Decl.)

All of the documentary evidence in this case suggests that there was only one group long term disability benefits plan issued to Site for Sore Eyes, covering plaintiff and her various employees. Furthermore, Ms. Stein has declared unequivocally that there was only one group long term disability plan associated with plaintiff and that such plan is the same one that covered plaintiff's Site for Sore Eyes employees. Defendant has provided seven years of monthly premium bills, each of such bills identified by the group policy number and each of such bills listing both plaintiff and her other employees, and each of which charged a single overall premium for all participants including plaintiff.

A plaintiff cannot defeat a motion for summary judgment by merely restating the conclusory allegations contained in his complaint, and amplifying them only with speculation about what discovery might uncover. *Contemporary Mission v. United States Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981). Here, plaintiff has not identified any genuine evidence that a second policy exists

12

1  covering plaintiff independent of her employees. Defendant, for its part, has represented that it has
2  produced all the relevant documents in its possession and Ms. Stein unequivocally denies, under
3  penalty of perjury, the existence of another policy and clarifies why plaintiff may have been
4  mistaken in her interpretation of the evidence that has been produced. Moreover, the documentary
5  and testimonial evidence adduced by defendant clearly establishes that plaintiff was covered by the
6  same policy as her employees and paid for all their premiums together as evidenced by the monthly
7  statements.

8  In light of these facts, plaintiff's contention that a second policy exists is entirely speculative
9  and additional discovery in search of a second policy would be futile.

10  In light of all the surrounding facts and circumstances from the point of view of a reasonable
11  person, the Court finds that plaintiff's claims are governed by ERISA because plaintiff's group long
12  term disability benefits plan was established and maintained by plaintiff for the purpose of providing
13  disability benefits for her employees including herself. *Peterson v. American Life & Health Ins.*
14  *Co.*, 48 F.3d 404, 408 (9th Cir. Cal. 1995) (citing 29 U.S.C. § 1002(1))("A policy is governed by
15  ERISA if it is 'established or maintained by an employer . . . for the purpose of providing [disability
16  insurance] for its participants'").

### III. ERISA Preemption

18  ERISA expressly preempts all state laws "insofar as they may now or hereafter relate to any
19  employee benefit plan." *Cleghorn v. Blue Shield*, 408 F.3d 1222, 1225 (9th Cir. Cal. 2005) (citing
20  29 U.S.C. § 1144(b)(2)(A)). ERISA section 502(a) contains a comprehensive scheme of civil
21  remedies to enforce ERISA's provisions. *Id.* (citing 29 U.S.C. § 1132(a)). Pursuant to 29 U.S.C. §
22  1132, a civil action may be brought "to recover benefits due to [a person] under the terms of his
23  plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under
24  the terms of the plan." 29 U.S.C. § 1132.

25  Having found that the Plan is governed by ERISA, the Court also finds that any state law
26  claims asserted in connection with the Plan are preempted by ERISA.

**CONCLUSION**

For the foregoing reasons, defendant's Motion for Partial Summary Judgment on the Applicability of the Employee Retirement Income Security Act (ERISA) [Docket No. 17] is GRANTED. Plaintiff may amend her complaint, within 30 days of the date of entry of this order, to plead ERISA causes of action.

IT IS SO ORDERED.

Dated: 9/4/08

SAUNDRA BROWN ARMSTRONG
United States District Judge